IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-03402-CNS

E.W.,

    Plaintiff,

v.

COMMISSIONER, Social Security Administration,

    Defendant.

---

**ORDER**

---

Plaintiff E.W.[1] brings this appeal of a denial of disability insurance benefits (DIB) and supplemental security income (SSI) for a variety of physical and mental impairments. ECF No. 12 (Opening Br.); Administrative Record (A.R.) at 2412. The ALJ denied the claims, and Claimant went through the appeals process. For the reasons explained below, the Court affirms in part and reverses in part the denial of benefits, and remands for further analysis.

**I.  BACKGROUND**

Plaintiff first filed for DIB and SSI under Title II of the Social Security Act on August 7, 2014, and October 7, 2014, respectively. A.R. at 481, 485. On April 6, 2017, an ALJ issued an unfavorable decision. A.R. at 48–64. That decision was reversed and remanded

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff E.W. is identified by her initials only.

1

for further proceedings on August 21, 2019. A.R. at 2485–95. While the appeal was pending, Plaintiff filed subsequent DIB and SSI applications in 2019, which were consolidated, upon remand, with the 2014 applications. A.R. at 2500, 2687, 2700. The ALJ issued an unfavorable decision on November 13, 2020, which is the relevant decision for purposes of this appeal. A.R. at 2412–47. Plaintiff appealed, and the Appeals Council affirmed on October 19, 2023. A.R. at 2408. Plaintiff properly appealed the 2020 decision to this Court on December 22, 2023. ECF No. 1.

E.W.'s alleged disability onset date is February 13, 2014. A.R. at 485. She alleged the following disabilities: debilitating migraines; confusion, irritability, sensitivity to light and sound; fibromyalgia; IBS; PTSD; restless leg syndrome; herniated lumbar discs – moderate to severe back pain; cervical stenosis – neck pain, shoulder pain, weakness; cubital tunnel syndrome; and degenerative joint disease. A.R. at 485.

The ALJ conducted the five-step sequential analysis to determine whether Petitioner was disabled for purposes of the Act. At step one, the ALJ found that Petitioner had not engaged in substantial gainful activity since January 13, 2014. A.R. at 2418. At step two, the ALJ determined that Plaintiff had the severe impairments of lumbar and cervical degenerative disc disease, osteoarthritis in multiple joints, fibromyalgia, migraine, anxiety disorder, depressive disorder, and somatic disorder. A.R. at 2418. At step three, the ALJ found that the impairments did not meet or medically equal one of the listed impairments. A.R. at 2421. At step four, the ALJ found that Plaintiff could not perform relevant past work. A.R. at 2433. The ALJ then found that E.W. had the residual functional capacity (RFC) that:

> she can occasionally lift and/or carry about 20 pounds, and can frequently lift and/or carry about 10 pounds. She can stand and/or walk for about 6 hours in an 8-hour workday. She can sit for about 6 hours in an 8-hour workday. She can frequently push and pull with the bilateral upper extremities. She can never climb tall ladders, ropes, or scaffolds. She can occasionally climb stairs and ramps. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally reach overhead with the bilateral upper extremities. She can frequently handle and finger with the bilateral upper extremities, and has no other manipulative limitations. She can occasionally work in extreme heat or cold, and can occasionally work at unprotected heights, and in close proximity to dangerous moving machinery. She can understand and remember tasks that are moderately complex, meaning work that requires some skills but not more complex duties that can be learned on the job in about 6 months for average performance. These tasks would involve independent judgment, multiple steps, and abstract ideas. She is able to sustain concentration, persistence, and pace for these instructions over a typical workday and workweek. She is able to interact appropriately with supervisors and can tolerate occasional interaction with coworkers. However, work duties should not require work with the public; although [she] is able to tolerate superficial public contact. [Plaintiff] is able to tolerate work changes, make work decisions, and is able to travel as well as recognize and avoid work hazards.

A.R. at 2424. At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the claimant can perform. Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from January 13, 2014, through the date of the decision. A.R. at 2435.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Plaintiff challenges the ALJ's decision on three bases, arguing that the ALJ improperly considered some impairments to be non-severe at step 2, failed to properly determine Plaintiff's RFC, and improperly conducted the step 5 analysis.

## II.  LEGAL STANDARD AND STANDARD OF REVIEW

An individual is considered disabled under the Social Security Act if they are unable to do "any substantial gainful activity" due to any medically determinable physical and/or mental impairment that can be expected "to last for a continuous period of not less than 12 months." *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). An individual bears the initial burden of establishing their disability. *See id.* at 1062. To determine whether an individual is disabled, ALJs use a five-step, sequential analysis that considers whether the individual:

    (1) is currently engaged in "substantial gainful activity";

    (2) has a "severe" impairment or impairments;

    (3) the impairment or impairments equals one of the impairments listed in the appendix of the relevant disability regulation;

    (4) the impairment or impairments prevent the individual from doing their past work; and

    (5) has the residual functional capacity (RFC) to perform other work in the national economy.

*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). The burden to prove elements one through four falls on the plaintiff. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). However, if Plaintiff "is not considered disabled at step three, but has satisfied their burden at steps one, two, and four, the burden shifts to the Commissioner" to show that Plaintiff has the RFC to perform other work in the national economy, taking into consideration their age, education, and work experience. *Id.* Prior to step four, the ALJ must formulate an RFC finding,

considering the limiting effects of all of the claimant's impairments. 20 C.F.R. § 404.1520(e); *Henrie v. United States Department of Health and Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

Exercising jurisdiction under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). The Court must evaluate the agency's decision "solely by the grounds invoked by the agency," and may not "affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Hackett v. Barnhart*, 475 F.3d 1166, 1174 (10th Cir. 2007).

"Substantial evidence" is evidence that is sufficient, based on the entire record, to support the ALJ's factual determinations. *See Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2022). A district court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The threshold for this "evidentiary sufficiency is not high"; the evidence required is "more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Nonetheless, a decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotations omitted). A decision not supported by substantial evidence must be reversed. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

## III. ANALYSIS

Plaintiff argues that numerous findings the ALJ made were not supported by substantial evidence. The Court will address each in turn.

### A. Severe Impairments

Plaintiff argues that the ALJ improperly conducted the step two analysis of assessing whether her impairments are severe. Plaintiff challenges the ALJ's finding that two of Plaintiff's claimed impairments, ankylosing spondylitis (AS) and multiple sclerosis (MS), were not medically determinable, and so were not severe. A.R. at 2418–21. Plaintiff also challenges the determination that her knee impairments were not severe. The Court finds that the ALJ's findings are supported by substantial evidence.

A claimant's "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. 404.1521. Here, the ALJ made a reasonable conclusion based on the relevant evidence regarding AS. There was no radiographic evidence that Plaintiff had AS. A.R. at 3294, 2421. One rheumatologist, Dr. Zyskowski, "suspect[ed]" that Plaintiff had AS, but two other rheumatologists saw no signs of it. A.R. at 2421, 2307, 2316, 3290. Another doctor, Dr. Timms, noted that Plaintiff had a genetic marker for a gene mutation that can indicate AS, but concluded that the gene had uncertain clinical significance. A.R. at 2430. The two doctors' opinions and the negative radiography constitutes substantial evidence supporting the conclusion that Plaintiff did not have medically determinable AS.

6

Similarly, the ALJ reasonably concluded that Plaintiff did not have medically determinable MS. Plaintiff's most recent brain MRI and treatment notes did not indicate the existence of MS. A.R. at 2421, 781, 3917. While earlier reports suggested that MS was suspected, the diagnostics at that time were not conclusive, and the irregular diagnostics could indicate migraines as much as MS. A.R. at 2421. Thus, because the medical diagnostic evidence did not show signs of MS, substantial evidence supports the conclusion that Plaintiff did not have medically determinable MS. Additionally, as the Commissioner notes, the ALJ still considered Plaintiff's symptoms that she attributed to AS and MS, regardless of the diagnosis. A.R. at 2425–28.

Plaintiff also disputes the ALJ's conclusion at step two that Plaintiff's knee conditions were not severe. The ALJ found that Plaintiff had medically determinable knee impairments, including pseudo-gout. However, the ALJ determined that these impairments were non-severe. The pseudo-gout, for instance, was controlled with medication. A.R. at 2419, 5637, 5642. Additionally, multiple providers recorded that Plaintiff had full lower extremity strength, full knee range of motion, and normal gait. A.R. at 2419, 3321, 5591, 5641. The Court agrees that these findings and treatment constitute substantial evidence to support the conclusion that the knee conditions were not severe. While Plaintiff cites contrary evidence in the record, the Court cannot reweigh the evidence; instead, the inquiry is whether a reasonable factfinder could come to the same conclusion based on the evidence. Here, a reasonable factfinder could conclude that the medication and normal capabilities indicate that the condition is not severe. Thus, the Court finds no reversible error with the ALJ's determination at step two.

### B. The Residual Functional Capacity (RFC) Assessment

Plaintiff also argues that the ALJ's RFC was not supported by substantial evidence, challenging multiple determinations within the RFC. Plaintiff bears the burden of showing that limitations should be included in her RFC assessment. *Howard v. Barnhart*, 379 F.3d 945, 948–49 (10th Cir. 2004). The ALJ found that Plaintiff had the RFC to perform light work, with limitations as described above. A.R. at 2424. The Court addresses each of Plaintiff's challenges to the RFC below.

#### 1. Migraine and Headache Analysis

Plaintiff first argues that the ALJ did not sufficiently consider Plaintiff's headaches and migraines in formulating the RFC. The Court agrees; the ALJ's conclusion that the migraines and headaches did not impact the RFC was not supported by substantial evidence.

The Commissioner argues that the ALJ relied upon the opinion of Dr. Terry, who considered Plaintiff's medical records, including evidence of her migraines, and concluded that Plaintiff remained capable of a restricted range of light work. However, the ALJ's analysis of Dr. Terry's opinion did not mention anything about migraines and headaches. The ALJ placed great weight on Dr. Terry's opined limitations because they were supported by the physical examination findings and other physical impairments. A.R. at 2431. The ALJ did not explain how this opinion related to Plaintiff's migraines. Thus, the inference that Dr. Terry's recommended limitations meant that Plaintiff's migraines did not affect her functioning is not supported by substantial evidence.

8

The ALJ also found that Plaintiff's migraines had improved with treatment. A.R. at 2427. However, this conclusion is not supported by substantial evidence. The ALJ concluded that pain management had helped her migraines because "there is some indication that the claimant's other conditions impacted her headache and migraine symptoms." A.R. at 2427. The only support for this statement is that Plaintiff's neurologist suggested that her headaches improve when her inflammatory episodes resolve and that Plaintiff had fewer visits with her neurologist after she started pain management. A.R. at 2427. That is not enough support for the conclusion that her migraines and headaches had improved, despite Plaintiff's subjective complaints of them and numerous references in the record to her severe headaches and migraines after 2017. *See* ECF No. 12 at 49, n. 9 (collecting migraine and headache references in the record). Additionally, the ALJ also noted that, with regard to "headaches and migraines, the record reflects the claimant tried and failed multiple medications." A.R. at 2426. The ALJ did not adequately explain the conclusion that Plaintiff's migraines had improved with treatment, especially considering the finding that multiple medications had failed.

Plaintiff also argues that the ALJ did not consider that Plaintiff's migraines require her to lie down or be absent from work when formulating the RFC. The Court agrees. The ALJ did not seem to consider the treating neurological assistant's opinion that Plaintiff's work capacity was subject to breaks and unexcused absences in formulating the RFC. A.R. at 853–58. Nor did the ALJ explain how the migraines and headaches were or were not included in the RFC. In sum, the ALJ did not adequately assess Plaintiff's migraines in determining her RFC. The Court remands the case for further analysis on how Plaintiff's

headaches and migraines affect her RFC, and, by extension, how that RFC would affect the work she is able to perform at step 5.

### 2. Combined Impact of Plaintiff's Impairments

Plaintiff next argues that the ALJ did not consider the combined impacts of Plaintiff's impairments in formulating the RFC, considering that Plaintiff reported having debilitating symptoms. The ALJ found that the severity of Plaintiff's reported symptoms was inconsistent with other evidence in the record, notably her daily activities, objective medical records, and improvement after treatment. However, because the Court finds that the ALJ did not sufficiently address Plaintiff's headaches and migraines, the analysis of Plaintiff's combined symptoms is necessarily also deficient. While the medical records and improvement indicate that some of Plaintiff's symptoms are less debilitating than reported, particularly her physical symptoms, the Court finds that the ALJ's analysis of her combined symptoms did not sufficiently address her migraines and headaches, particularly in concluding that her daily activities undermined their severity.

The RFC assessment must address the claimant's reported symptoms, in conjunction with other evidence. *See* 20 C.F.R. § 404.1529. Plaintiff reported that she had debilitating symptoms: constant headaches, back pain, and neck pain, general pain, osteoarthritis, fibromyalgia and migraines leaving her unable to concentrate, and an inability to walk more than half a block, stand more than 30 minutes, sit longer than one to two hours, lift more than ten pounds, or pay attention for more than five minutes. A.R. at 564, 2789, 2795.

The ALJ found that Plaintiff's reported symptoms were inconsistent with objective medical evidence in the record. For instance, the ALJ pointed to multiple records, most recently from 2020, showing that Plaintiff had normal gait, normal station, and normal strength. A.R. at 5591, 5634, 5641; *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence"). The ALJ found that these records undermined Plaintiff's report that she had weakness and difficulty walking. The ALJ also noted that medical records indicated that Plaintiff often displayed normal judgment, affect, speech, thought process, memory, intelligence, and insight, although Plaintiff's mental status findings were also sometimes abnormal. The ALJ found that this evidence was inconsistent with Plaintiff's reported symptoms of confusion and difficulties with memory, concentration, completing tasks, understanding, following instructions, and getting along well with others. A.R. at 2425. The ALJ cited normal, or minimally abnormal, mental status examination findings in support. The Court finds that these medical records constitute substantial evidence supporting these conclusions.

The ALJ also found that evidence of Plaintiff's effective treatment undermined her reported debilitating symptoms. She had neck surgery in October 2014, after which she reported doing well without any upper extremity numbness or tingling. A.R. at 2426, 904. She had treatment for recurrent infections and arthralgia symptoms, which also helped her neck symptoms. A.R. at 2426, 3188, 2304. The ALJ cited to notes in the record that, as a result of the treatment, Plaintiff had improved function. A.R. at 2427, 5587, 5592, 5612. The Court agrees that these conclusions are supported by substantial evidence.

However, the Court finds that the ALJ's conclusions regarding Plaintiff's migraines, particularly the inferences made about her daily activities, are not supported by substantial evidence. The ALJ found that Plaintiff performed daily activities and part-time work that undercut the severity of her reported symptoms: she cared for her son in 2014; she worked eight months as an in-home babysitter for four children in 2015; she worked as a live-in nanny in 2017; she started a babysitting job in 2019; and she worked as a taxi driver from 2019 to 2020, which required her to lift luggage and occasionally drive hours from Colorado Springs to the Denver airport. A.R. at 2425–26. While part-time work does not constitute substantial gainful activity, it may be considered in evaluating how much work a claimant can do. *See Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979). This is particularly true where, as here, the part-time work is used to evaluate a claimant's reported symptoms, rather than evidence that the claimant can do full-time work. *See Wilson v. Astrue*, 602 F.3d 1136, 1145-46 (10th Cir. 2010). Plaintiff argues that these activities do not undermine the severity of Plaintiff's migraine symptoms because they were flexible jobs that allowed her to take long breaks, choose her hours, and not work on bad days. ECF No. 12 at 66. Plaintiff also notes that she was often accompanied or assisted in her daily activities and childcare jobs. *Id.* The Court agrees that these activities do not necessarily conflict with the severity of Plaintiff's reported migraine and headache symptoms, and finds that the ALJ did not adequately explain how these activities were inconsistent with her reported migraines in combination with her other symptoms.

Because the Court is remanding the case for a more substantial analysis of the impact of Plaintiff's headaches and migraines on her RFC, it follows that the ALJ should

conduct a new analysis on the combined impacts of Plaintiff's symptoms, including her migraines and headaches. In conducting this analysis, the ALJ should consider the nature of Plaintiff's previous part-time work and daily activities, particularly whether she had assistance and how often she was unable to work, in assessing whether these activities were inconsistent with the reported combined impact of her symptoms.

### C. Medical Opinions

Plaintiff also argues that the ALJ did not properly consider the various medical opinions. The ALJ noted that many of the opinions conflicted and ultimately found that Plaintiff's limitations were in the middle of those recommended by the medical providers, without fully adopting any. This approach is appropriate, as long as it is supported by substantial evidence. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (upholding ALJ's assessment that was "between the two medical opinions without fully embracing either one"). The Court will consider whether the ALJ properly rejected certain medical opinions.

#### 1. Dr. Sokalski

Social Security regulations require ALJs to evaluate medical opinion evidence based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with the other evidence in the claim. 20 C.F.R. §§ 404.1520c(c), 404.1520(c); *see also C.M.D. v. Comm'r of Soc. Sec.*, No. 1:22-CV-01005-DDD, 2022 WL 18141574, at *1 (D. Colo. Dec. 9, 2022). Supportability and consistency are the most important factors, and ALJs must explain how they considered those factors in the decision. *See* 20 C.F.R § 404.1520c(b). An ALJ

13

cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted).

First, the ALJ found Dr. Sokalski's recommended limitations to be inconsistent with other evidence in the record. Dr. Sokalski opined that Plaintiff had a limited ability to handle and finger and had postural and lifting limitations. A.R. at 24, 2430. The ALJ found that the handling and fingering limitations were supported by his treatment notes, which noted osteoarthritic changes in her hands, but that the postural and lifting limitations were inconsistent with other evidence in the record. A.R. at 2430. Evidence of Plaintiff's activities in the record, for instance, undermined these limitations: she had good function in her daily living activities in 2014, worked as an in-home babysitter of four children in 2015, worked as a live-in nanny in 2017, and worked as a taxi driver in 2019 and 2020, which involved lifting luggage. The Court finds that a reasonable fact finder could conclude that these activities are inconsistent with a recommended limitation precluding all postural activities.

The ALJ also noted that Dr. Sokalski's limitations were inconsistent with treatment records from other providers. A.R. at 2431. The treatment records generally recorded normal gait, station, range of motion, strength, and sensation. A.R. at 2431, 5586–5660. The Court agrees that substantial evidence supports the ALJ's finding that Dr. Sokalski's opinion was inconsistent with the record.

### 2. Dr. Timms

The ALJ found Dr. Timms's opinion unpersuasive because it was unsupported by his own treatment notes and was inconsistent with the record, namely objective medical evidence and Plaintiff's activities. Dr. Timms limited Plaintiff to lifting no more than 10 pounds, standing and walking for less than two hours, sitting less than six hours, and postural and manipulative limitations. A.R. at 2430, 4983. However, Dr. Timms arrived at these assessments because Plaintiff had a genetic marker for a gene mutation that can indicate AS. A.R. at 2430. As discussed above, the ALJ reasonably concluded that this marker was insufficient evidence that Plaintiff had medically determinable AS, so the ALJ reasonably concluded that limitations based on suspected AS were not sufficiently supported.

Additionally, the ALJ concluded that this finding was not supported by Dr. Timms's notes. He noted that Plaintiff had other normal findings that argued against AS, and that the gene marker had uncertain clinical significance. A.R. at 2430, 4983. Dr. Timms also opined that Plaintiff had neuropathy, while also noting normal sensory, motor, and cerebellar functions. A.R. at 2430, 4983. The Court agrees that the ALJ reasonably concluded that these findings conflict with Dr. Timms's recommendations, and so his conclusions are not supported.

Finally, the ALJ found that Dr. Timms's opined limitations were inconsistent with other evidence in the record. Notably, an October 2017 electromyography (EMG) found no evidence of neuropathy. Additionally, as discussed above, the evidence of her daily activities undermines his finding of significant postural limitations. A.R. at 2430, 4983. The

Court finds that the ALJ's conclusions that Dr. Timms's opinions were unsupported and inconsistent are supported by substantial evidence.

### D. Step Five Analysis

Finally, Plaintiff challenges the ALJ's determination at step five of the analysis that other work exists in significant numbers in the national economy that Plaintiff can perform. The Court finds that the ALJ appropriately relied on a vocational expert who based their opinion on a hypothetical individual with Plaintiff's age, education, work experience, and RFC. A.R. at 2899. The vocational expert opined that such an individual could perform work in six representative occupations, three light and three sedentary. A.R. at 2900. This expert's opinion constitutes substantial evidence that the ALJ relied upon in the step five finding. *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993) (when the findings regarding a claimant's impairment are adequately reflected in the ALJ's hypothetical questions to the vocational expert, the vocational expert's testimony constitutes substantial evidence to support the ALJ's related determination). However, Plaintiff also argues that the hypotheticals given to the vocational expert did not match Plaintiff's RFC. ECF No. 17 at 14. The Court need not address this argument. In light of the Court's finding that the ALJ's RFC determinations did not adequately consider Plaintiff's migraines and headaches, the Court concludes that a new analysis at step 5 may also be necessary after determining an RFC that properly considers Plaintiff's migraines and headaches. The hypotheticals given to the vocational expert must match the updated RFC.

## IV. CONCLUSION

For the reasons set forth above, the Court AFFIRMS in part and REVERSES in part the Commissioner's decision denying Plaintiff's DIB and SSI benefits, and REMANDS for further proceedings consistent with this order.[2]

Dated this 27th day of March 2025.

BY THE COURT

Charlotte N. Sweeney
United States District Judge

---

[2] The Court does not address Plaintiff's request for immediate award of benefits due to the Court's limited remand.